**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | | |
|---|---|---|
| POLLY GAZA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:23-cv-00318 |
| | ) | |
| NORTHERN PLANT SERVICES, LTD., | ) | |
| MICHAEL S. SUTTER, and JERRI | ) | |
| L. SUTTER, | ) | |
| | ) | |
| Defendants. | ) | |

**NPS' BRIEF IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant Northern Plant Services, Ltd. ("NPS" or the "Company") opposes Plaintiff Polly

Gaza's ("Gaza") *Motion for Partial Summary Judgment* ("MPSJ") (Dkt. 101) based on the

arguments and authorities presented below, and the evidence in its contemporaneously filed

Statement of Genuine Issues.

## I.  INTRODUCTION

This is a civil action in which Gaza claims NPS unlawfully terminated her employment

and then wrongly redeemed her shares of NPS stock. Her amended complaint contains three

counts, two seeking declaratory and compensatory relief from NPS, and one seeking compensatory

relief from Michael and Jerri Sutter (sometimes, the "Sutters") for their alleged breach of fiduciary

duties owing to her.

Count I of Gaza's *First Amended Complaint* is the focus of Gaza's MPSJ. Count I seeks

judicial declarations nullifying the Company's redemption of Gaza's NPS stock. The declaratory

relief sought in Gaza's MPSJ *differs* from the relief sought in Count I of the *First Amended*

*Complaint.* The MPSJ requests judicial declarations that Gaza is entitled to a) reinstatement of her employment, b) payment of the wages she lost, and c) restoration of her NPS stock.

Regardless of how Gaza packages the declaratory relief she seeks, disposition of her MPSJ turns on whether NPS had "cause" (as the term is defined in the parties' written Buy-Sell Agreement) to terminate her employment.

## II.  FACTS

In accord with N.D. Ind. L.R. 56-1(b)(2) NPS has contemporaneously filed its Response To Statement of Facts which is incorporated here.

## III.  SUMMARY OF ARGUMENT

NPS never authorized Gaza's sixteen (16) year absence from full-time work, and it had every right in 2022 to terminate her employment for cause under the terms of the Buy-Sell Agreement. Gaza offers no evidence she was *expressly* authorized by NPS to stop work. Instead, she invites the Court to *infer* her absence was authorized (and thus not grounds to terminate her employment for cause) because a) NPS never objected to her absence or acted to compel her return to work, b) NPS continued paying her salary after she stopped working in 2006, and c) Sutters declined Gaza's late 2020 and 2021 offers to "come in and help out," and to "start being involved." The inference Gaza invites is not a reasonable one.

Gaza also argues the same factual circumstances discussed above establish that NPS waived its contract right to terminate her for cause based on her absence from full-time work. Waiver requires an affirmative act – mere silence, acquiescence, or inaction does not constitute waiver unless there was a duty to speak or act. *Pohle v Cheatham*, 724 N.E.2d 655 (Ind. App. 2000). The evidence on which Gaza's relies to argue waiver simply demonstrates that NPS did not object to Gaza's absence, that it acquiesced in her absence, and that it never took action to address

her work absence - until 2022. Gaza's designated evidence fails to show NPS affirmatively acted to relinquish its contract rights.

## IV. LAW AND ARGUMENT

*NPS never authorized Gaza's absence from work.*

Section 4 of the NPS Buy-Sell Agreement reflects the Company's policy that all shareholders *work full-time* for the Company. Ex. 1. Section 4 provides that if an NPS shareholder's employment is terminated *for cause*, she must make her stock available to the Company for purchase. Ex. 1. In turn, Section 15 of the Buy-Sell Agreement defines the phrase "Termination for Cause" to include "Absences from work under *unauthorized* non-medical leave other than for vacation in excess of eight calendar days per month." Ex. 1. The purpose of these provisions is to require NPS shareholders to actively participate in the Company's operation through full-time employment, and to state the consequence of failing to do so.

During the process of forming NPS, the four founding members (Donald Gaza, Polly Gaza, Michael Sutter, and Jerri Sutter) agreed that each couple would share equally in the financial risks and rewards inherent in operating NPS. St. 85. Accordingly, from its inception to Donald Gaza's death in August of 2020, NPS always paid salaries, benefits, and dividends to its four shareholders such that each couple (the "Gaza Couple" and the "Sutter Couple") received the same amount of such payments, even if there were disparities in the amounts paid to individuals within a couple. St. 86.

Gaza stopped performing work for NPS in 2006 and never resumed working. St. 82. She offers no contrary evidence. Sometime after she stopped working for NPS in 2006, Gaza opened a restaurant called "Chicago Raw." St. 83. The are currently two locations of "Chicago Raw." St. 83. Though Polly Gaza stopped working for NPS in 2006, Donald Gaza worked full-time for NPS from its inception until his death in August 2020. St. 84.

When Polly Gaza stopped working at NPS in 2006, the Sutters continued to feel it was important for NPS to preserve the existing practice of equalizing the total payments made for salary, benefits, and dividends to the Gaza Couple and Sutter Couple. St. 87. This avoided potential conflict among the shareholders and disruption of the business. St. 87. When Donald Gaza passed away, the Sutters began performing all the work duties that had been theretofore performed by Jerri Sutter, Donald Gaza, and me, since 2006, when Polly Gaza stopped working for NPS. St. 88.

Gaza offer no evidence that NPS expressly authorized the 16-year absence from work that she began in 2006. Instead, Gaza invites the Court to draw what she terms the only "reasonable inference" available from the facts, that is, that NPS *impliedly* authorized her absence by declining to terminate her employment until 2022, by continuing to pay her compensation until 2022, and by declining her late 2020 and 2021 offer to "come in and help out," to "start being involved," and to work on "projects … like the phones." Gaza Memorandum (Dkt. 101-1), p. 13.

In considering a motion of summary judgment, the trial court draws all legitimate inferences in favor of the non-moving party. *Young v Lincoln Nat. Corp.*, 937 F.Supp. 1326, 1333, (N.D. Indiana 1996), citing *Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A legitimate inference that is supported by the additional facts NPS designated in its Response to Statement of Material Facts is that Sutters declined to object or address Gaza's absence until after Donald Gaza died in August of 2020 because he was an important, productive employee of the Company and maintaining the 50-50 split of compensation, benefits, and profits paid to the Gazas and the Sutters was in the best interest of NPS. That is the inference to be drawn from NPS' acquiescence in Gaza's absence.

*NPS never waived the right to terminate Gaza for cause because of her unauthorized absence.*

4

Overlapping Gaza's argument that NPS impliedly authorized Gaza's absence is her argument that NPS waived its contract right to terminate her for cause because of the unauthorized absence. Gaza Memorandum (Dkt. 101-1), p. 14. Ordinarily, the issue of waiver is fact sensitive. *Hendershot v. Indiana Medical Network, Inc.,* 750 N.E.2d 798, 808 (Ind. Ct. App. 2001). Gaza's designated evidence falls short of demonstrating waiver.

Waiver is the intentional relinquishment of a known right. *Pohle v Cheatham*, 724 N.E.2d 655, 659 (Ind. App. 2000). It may be expressly given or implied by a course of conduct. *Id*., *Continental Optical Co. v. Reed*, 119 Ind. App. 643, 649, 86 N.E.2d 306, 309 (1949). Importantly, waiver requires an affirmative act. *City of Crown Point v Misty Woods Properties, LLC*, 864 N.E.2d 1069, 1079, (Ind. Ct. App. 2007), citing *Pohle*. Mere silence, acquiescence, or inactivity does constitute a waiver unless there is a duty to speak or act. *Id*. The burden of proof lies with the party asserting waiver. *American Nat. Bank & Trust Co. v St. Joseph Valley Bank*, 391 N.E.2d 685, 687 (Ind. App. 1979).

Gaza argues the Sutters, and by implication, NPS, *never objected* to her absence and thus waived any objection to Gaza's absence. Gaza Memorandum (Dkt. 101-1), p. 5. For example, Michael Sutter … "did not object" to Gaza not working, and he "did not raise the idea of terminating Gaza" to Donald Gaza. Jerri Sutter "did not inquire" whether Gaza was returning to work, and "never had a conversation" with Gaza about her absence from work. *Id*. This evidence does not establish waiver under the *Pohle* and *Misty Woods.* It merely shows NPS stayed silent about Gaza's absence, and that it acquiesced. This evidence is insufficient to constitute a waiver. Notably, Gaza offers no evidence or argument that NPS had a duty to object or act.

Gaza next argues NPS waived the contract right to terminate her for cause in 2015 because all four directors "agreed to a resolution that provided Polly Gaza a $291,453 annual salary." Gaza

Memorandum (Dkt. 101-1), p. 12. Gaza completely misinterprets the board resolution to which she cites. St. 20. Far from "providing" Gaza a salary, the 2015 resolution only reflects the directors' acknowledgment that she *received* a salary of $291,453 *in the year ending 2014*. Ex. 5. More importantly, this evidence merely shows that NPS continued to pay Gaza's salary well after her 2006 absence began. NPS took no action to eliminate or reduce Gaza's pay. That the NPS Board declined to terminate Gaza, or to reduce/eliminate her salary, is not a waiver of its right to do so. Inaction does not constitute a waiver absent a duty to act. *Pohle* and *Misty Woods, supra.* p. 4. Gaza makes no argument that NPS had a duty to act on her absence.

Finally, Gaza argues NPS waived the contract right to terminate Gaza for cause in late 2020 and 2021 by declining her offer to "come in and help out" and "start being involved," or work on the phones. Gaza Memorandum (Dkt. 101-1), p. 6. When Gaza made these offers, she had already been absent from full-time work for approximately 14 years. She was running one or more restaurants in the Chicago area. St. 83. Notably, she did not offer to resume full-time work. NPS had no duty to accept her offer to start pitching in after the extended absence, and Gaza offers no argument to the contrary.

## V. CONCLUSION

Based on the arguments and authorities presented in this Brief, and considering the Additional Material Facts designated by NPS, it respectfully requests the Court deny the MPSJ.

Respectfully submitted,

Mark D. Boveri (#10787-71)
KRIEG DeVAULT LLP
4101 Edison Lakes Parkway, Suite 100
Mishawaka, IN  46545

Telephone: (574) 277-1200
Facsimile: (574) 277-1201
mboveri@kdlegal.com
*Attorney for Defendant Northern Plant Services, Ltd.*

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on January 30, 2025, he caused a copy of the foregoing to be filed electronically with the Clerk of the U.S. District Court, Northern District of Indiana, Hammond Division, using the CM/ECF (*electronic case filing*) system, which will send electronic notification of such filings to all attorneys of record.

Mark D. Boveri (#10787-71)

7