UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| POLLY GAZA,<br><br>    Plaintiff,<br><br>    v.<br><br>NORTHERN PLANT SERVICES LTD, et al.,<br><br>    Defendants. | Case No. 2:23-CV-318-GSL |

**OPINION AND ORDER**

This matter is before the Court on the parties' cross partial motions for summary judgment. For the reasons below, the Court DENIES Plaintiff's motion [DE 101] and GRANTS-IN-PART and DENIES-IN-PART Defendants' motion [DE 116].

**I.    UNDISPUTED FACTS**

Defendant Northern Plant Services, Ltd. ("NPS") is an Indiana corporation originally formed by Defendants Michael Sutter and Jerri Sutter, Plaintiff Polly Gaza, and Gaza's deceased ex-husband Donald Gaza. [DE 109, ¶¶ 1, 2]. All four were shareholders with approximately equal shares in the company. [*Id.* ¶ 3]. Defendants Michael Sutter and Jerri Sutter were Vice President and Secretary, respectively. [*Id.* ¶¶ 4, 5]. Plaintiff Polly Gaza was Treasurer. [*Id.* ¶ 5]. Donald Gaza was President; when he died, Defendant Michael Sutter succeeded him as President. [*Id.* ¶ 4].

In 2000, a few years after Defendant NPS was formed, the four shareholders signed a Buy-Sell Agreement. [*Id.* ¶ 9]. This agreement required that each of the shareholders maintained full-time employment with the company. [*Id.* ¶ 11]. If any shareholder failed to do so, that individual could be "terminated for cause," and his or her shares could be acquired by the

company at a discounted price. [*Id.* ¶¶ 11, 17]. "Termination for cause" would be triggered by, among other things, "[a]bsenses from work under unauthorized non-medical leave other than for vacation in excess of eight (8) calendar days per month." [*Id.* ¶ 13].

Defendants Michael Sutter and Jerri Sutter testified that Plaintiff Polly Gaza stopped working full-time for the company in 2006. [*Id.* ¶¶ 18, 19]. Until 2020, Donald Gaza is the only one who had the authority to terminate Plaintiff. [*Id.* ¶¶ 23, 28]. He did not terminate Plaintiff, nor did Defendants Michael Sutter and Jerri Sutter ask that Plaintiff be terminated. [*Id.* ¶¶ 24–27]. Plaintiff continued to be paid her salary, benefits, and dividends. [*Id.* ¶¶ 20, 21]; [DE 111, ¶ 86]. Plaintiff also maintained her title as Treasurer. [DE 109, ¶ 49].

In August 2020, Donald Gaza died. [*Id.* ¶ 28]. Per the Buy-Sell Agreement, Donald Gaza's shares were redistributed among the other shareholders, such that Plaintiff Polly Gaza, Defendant Michael Sutter, and Defendant Jerri Sutter each owned a third of the shares of Defendant NPS. [*Id.* ¶ 29].

In December 2020, Plaintiff Polly Gaza emailed Defendant Jerri Sutter stating that she'd like to return to work at Defendant NPS. [*Id.* ¶ 30]. Defendant Jerri Sutter did not respond to Plaintiff's email. [*Id.* ¶ 31].

In January 2021, Plaintiff followed up with Defendant Jerri Sutter via text. [*Id.* ¶ 32]. Defendant Jerri Sutter acknowledged Plaintiff's message but did not address her inquiry about returning to work. [*Id.* ¶ 33]. Plaintiff replied, "When can we talk about what I can start being involved with. This is the third time I'm asking you. I want to help." [*Id.* ¶ 34]. Defendant did not respond. [*Id.* ¶ 35].

In March 2021, Plaintiff contacted Defendant Michael Sutter about returning to work and potential projects that she could work on. [*Id.* ¶ 39]. Defendant replied, "I'm more excited to

2

focus on our Carwash business." [*Id.* ¶ 40]. Defendant Michael Sutter later testified that he declined Plaintiff's offer to return to work but that he "won't stop [her] from working at [her] own business." [*Id.* ¶ 37].

In February 2022, Defendant NPS's attorney noticed all three living shareholders of the annual shareholder meeting. [*Id.* ¶ 42]. This meeting took place on March 3, 2022. [*Id.* ¶ 43]. At this meeting, Plaintiff was terminated "for cause." [*Id.* ¶¶ 44–46]. The meeting minutes stated that, "It was noted by Michael Sutter S. Sutter and Jerri Sutter L. Sutter that Polly A. Gaza has not been engaged in nor been in attendance at her employment with the Corporation for several years." [*Id.* ¶ 47].

In April 2022, Defendant NPS notified Plaintiff that it planned to purchase her shares for 50% of their 1999 value. [*Id.* ¶¶ 56, 57]. These shares are currently held in escrow. [*Id.* ¶ 58].

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of" the evidence that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To survive a properly supported motion for summary judgment, "the nonmoving party must present evidence sufficient to establish a triable issue of fact on all elements of its case." *McAllister v. Innovation Ventures, LLC*, 983 F.3d 963, 969 (7th Cir. 2020).

In deciding a motion for summary judgment, a court may "not weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th

Cir. 2021). Instead, a court's only task is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* (internal citation omitted). If there is no genuine dispute of material fact, then summary judgment is appropriate, and the movant is entitled to judgment as a matter of law. *Id.*

### III.  DISCUSSION

#### a. Plaintiff's Motion for Partial Summary Judgment on Ct. 1 (against Defendant NPS)

In Count 1 of her complaint, Plaintiff challenges her "for cause" termination. [DE 1, ¶¶ 41–45]. She seeks a declaratory judgment stating that her termination was improper and that she should be reinstated with backpay. In addition, Plaintiff asks that her stocks be restored (or retained if not yet transferred).

The central issue is whether Defendant NPS waived its authority to terminate Plaintiff "for cause" for unauthorized absences. [DE 101-1, page 12]. Under the Buy-Sell Agreement, Defendant may terminate Plaintiff "for cause" if she is absent—without authorization—for more than eight days in a month. [DE 95, Exhibit A, ¶ 15(c)(iv)]. Plaintiff argues that her absences were authorized. Notwithstanding, she argues that Defendant NPS "long since waived its right to terminate [Plaintiff] 'for cause' due to absence from full-time employment." [DE 101-1, page 14].

Waiver "is the intentional relinquishment or abandonment of a known right." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022) (internal citation omitted). "To decide whether a waiver has occurred, the court focuses on the actions of the person [or entity] who held the right . . . ." *Id.* Generally, waiver is offered as a defense to shield a party from liability for non-performance of a contractual duty. *Knopick v. Jayco, Inc.*, 895 F.3d 525, 530 (7th Cir. 2018). The waiver doctrine is "designed to prevent the waiving party from lulling the other party into a

4

belief that strict compliance with a contractual duty will not be required" and then seeking enforcement of that duty. *Id.* (quoting Williston on Contracts § 39:15 (4th ed. 2018)).

The Court must determine whether Defendant NPS waived its right to terminate Plaintiff "for cause" under the Buy-Sell Agreement. Defendant NPS is the party whose activity is under the microscope. First, the Court will evaluate Defendant NPS's conduct before Donald Gaza's death in 2020.[1] Defendant NPS contends that Plaintiff was completely absent from employment—without authorization—during this time frame, beginning in 2006. [DE 111, ¶ 82] (disputed by Plaintiff). Defendant NPS's right to terminate Plaintiff "for cause" was triggered after only the first month that Plaintiff was absent. Yet, Defendant NPS never exercised this right. Moreover, for these 14 years, Defendant NPS continued to pay a salary, benefits, and dividends to Plaintiff. [*Id.* ¶ 87].

An Illinois court was faced with a similar set of facts, which resulted in a finding of waiver. In *Bartels v. Denler*, a grocery store employee contracted with the owners of the store that he would not accept contemporaneous employment elsewhere. *Matschke v. Uropartners, LLC*, 227 N.E.3d 842, 853 (Ill. App. Ct. 1st Dist. 2023) (discussing *Bartels*, 333 N.E.2d 640 (Ill. App. Ct. 3d Dist. 1975), *appeal denied*, 226 N.E.3d 30 (Ill. 2024). The contract provided that if the employee violated that agreement, then the owners could terminate the employee and withhold his year-end incentive bonus. *Id.* Despite the prohibition, the employee openly worked at another store on his days off. *Id.* The grocery store owners were aware of this, but they did not take any action. *Id.* At some subsequent time, the employee left the store to start his own business. *Id.* The grocery store owners withheld the employee's incentive bonus from the prior year, citing the employee's prohibited contemporaneous employment. *Id.* The court determined

---

[1] It is undisputed that Donald Gaza had the authority to authorize Plaintiff Gaza's absences. [DE 109, ¶ 23].

that this was improper, and that the employee was entitled to his bonus. *Id.* The court noted that the grocery store owners' conduct was "inconsistent with any other intention but the waiver of their right" because, despite knowledge of the contract violation, they allowed the employee to continue working for them for over a year. *Id.*

The *Bartels* case is persuasive. Here, based on its purported facts, Defendant NPS was aware that Plaintiff was in violation of the Buy-Sell Agreement from 2006 till 2020. [DE 111, ¶ 82]. Notwithstanding the violation, Defendant NPS maintained Plaintiff's employment, continued to pay her, and made no attempts to have Plaintiff return to work. [DE 109, ¶ 68]; [DE 111, ¶ 86]. This was a conscious decision by Defendant, because Individual Defendants sought to avoid any conflicts with Donald Gaza—then President of NPS. [*Id.* ¶ 87]. Considering all of this, the Court finds that Defendant NPS waived its right to terminate Plaintiff "for cause" based on any unauthorized absences from between 2006 and 2020.

Next, the Court will evaluate Defendant NPS's conduct after Donald Gaza's death—post 2020. Defendant Michael Sutter succeeded Donald Gaza as President of Defendant NPS. [DE 109, ¶ 4]. Despite the change in leadership, Plaintiff's employment was not terminated "for cause" for another 18 months—on March 3, 2022. [*Id.* ¶¶ 54, 56]. During these 18 months, Plaintiff contacted Defendants Michael Sutter and Jerri Sutter on multiple occasions about resuming work for Defendant NPS. [*Id.* ¶¶ 30, 32, 34, and 39]. For the most part, these communications were ignored or rebuffed. [*Id.* ¶¶ 31, 33, 35, 37, and 40]. But on one occasion, Defendant Michael Sutter told Plaintiff that "[he] won't stop [her] from working at [her] own business." [*Id.* ¶ 37].

For the period after Donald Gaza's death, the issue of waiver is not as discernible. Did Individual Defendants prevent Plaintiff from returning to work? Was Plaintiff able to return to

work on her own, without cooperation from Individual Defendants? Were Plaintiff's offers to return to work genuine? Was she offering to return full-time? These questions are not answerable from the record. For that reason, the Court denies Plaintiff's motion for summary judgment.

### b. Defendants Sutters' Motion for Partial Summary Judgment on Cts. 2, 3, and 4

#### 1. Wrongful Termination Claim

In her response to Defendants' motion, Plaintiff concedes that she does not have a wrongful termination claim against the Individual Defendants. [DE 127, page 4 n.2]. The Court agrees and grants Defendants' motion on Count 3.

#### 2. Breach of Contract Claim

Plaintiff's Breach of Contract Claim is based on her "for cause" termination, despite purportedly fully performing under the Buy-Sell Agreement. [DE 95, ¶¶ 56–57]. As discussed previously, the record lacks undisputed facts to demonstrate whether Defendant NPS could terminate Plaintiff "for cause" based on alleged unauthorized absences after Donald Gaza's death. *See* [DE 126, ¶ 22] (dispute over Defendants' authorization of Plaintiff's absences). Logically, the same applies to Individual Defendants—the record lacks undisputed facts to show Defendants Sutters voted for Plaintiff's termination "for cause" without proper justification. Therefore, the Court denies Defendants' motion on Count 4.

#### 3. Breach of Fiduciary Duty Claim

"Shareholders in a close corporation stand in a fiduciary relationship to each other, and as such, must deal fairly, honestly, and openly with the corporation and with their fellow shareholders." *W & W Equip. Co. v. Mink*, 568 N.E.2d 564, 570 (Ind. Ct. App. 1991). Such is the case here; as shareholders, Plaintiff and Defendants Michael Sutter and Jerri Sutter stand in a fiduciary relationship to each other. [DE 126, ¶ 7]. Defendants argue that the record does not

support the conclusion that "the aspects of the way [Plaintiff] was terminated were unfair, dishonest, or that Defendants[] were not open with her at the March 3, 2022, meeting of the NPS shareholders . . . ." [DE 117, page 15–16]. Further, Defendants argue that Indiana's business judgment rule shields them from liability relating to Plaintiff's termination. [*Id.*].

Plaintiff contends that the "for cause" reason for her termination was pretextual because it triggered a forced transfer of her shares to Defendant NPS for half their value. [DE 127, page 5]. If such was the case, the reason for Plaintiff's termination was dishonest, and it breached the fiduciary duty owed to her. *See Mink*, 586 N.E.2d at 574. Plaintiff makes three arguments in support of a finding of pretext. First, the timing of Plaintiff's termination was suspect. [DE 127, page 6]. Both Individual Defendants stated that Plaintiff was terminated "for cause" because she stopped working for Defendant NPS in 2006. [DE 131, ¶¶ 31–32]. Yet, neither of Defendants Sutters contested Plaintiff's absences for over a decade—while Donald Gaza was president. [*Id.* ¶¶ 2–5]. It wasn't until 2022 that Plaintiff was terminated. [*Id.* ¶ 23]. Coincidentally, this is when Defendant Michael Sutter became President, Defendant NPS's business operations began to suffer, and Defendant Michael Sutter shifted his priorities to his own carwash business. [DE 126, ¶¶ 27, 28, 29]; [DE 131, ¶¶ 16, 17].

Second, Plaintiff argues that Defendants prevented her from returning to work. After Donald Gaza's death, Plaintiff contacted Individual Defendants on several occasions about returning to work or engaging in new projects. [*Id.* ¶¶ 6, 8, 10, 12, 15]. However, each time, Defendants either ignored Plaintiff or rebuffed her offers to work. [*Id.* ¶¶ 7, 9, 11, 12, 13, 14, 16]. Defendants contend that Plaintiff's offers to return to work were not genuine and that "she could have just shown up." [DE 130, page 11]. To this, particularly the latter, the Court is skeptical. Since Plaintiff had left full-time employment with Defendant NPS, the company had hired other

8

personnel and employed new systems to perform Plaintiff's previous duties. [DE 126, ¶¶ 15, 16]. In addition, "Plaintiff did not have keys to the building or computer/email access at [Defendant] NPS." [*Id.* ¶ 31]. Therefore, it is dubious to suggest that Plaintiff "could have just shown up" to work without some degree of cooperation from Individual Defendants.

      Third, Plaintiff asserts that Individual Defendants held personal animus against her. Defendants' negative feelings for Plaintiff are not hidden in the record. In his deposition, Defendant Michael Sutter stated that "he never really liked Polly Gaza" since "whenever he first met her." [DE 131, ¶ 41]. Further, he stated that he was "glad she stopped working" and that "[he] didn't want [her] to come back to work." [*Id.* ¶¶ 39, 46]. Defendant Jerri Sutter testified, regarding Plaintiff, that "I would like to un-know her." [DE 109, ¶ 78].

      Contrary to Defendants' arguments, the record does not foreclose the conclusion that Plaintiff's termination was without ulterior motives. *See Mink*, 568 N.E.2d at 573 ("Once it is established that one with a fiduciary duty has attempted to benefit from a questioned transaction, the law presumes fraud."). Further, Defendants' assertion of the business judgment rule also falls short. Defendant argues that "[t]ermination of [Plaintiff] was in the best interest of the Company . . . . [Defendants] would be acting in good faith in eliminating a 'ghost' salary in termination of [Plaintiff] . . . ." [DE 117, page 16]. But it isn't the "termination" that is in question. It is "termination *for-cause*". By terminating Plaintiff "for cause," Defendants activate the mechanism in the Buy-Sell Agreement that allows Defendants Sutters to repurchase Plaintiff's shares at a discounted price—a benefit to them personally, not only to the company. This is outside the scope of protection of the business judgment rule. Therefore, the Court denies Defendants' motion on Count 2.

## **CONCLUSION**

The Court hereby DENIES Plaintiff's motion [DE 101]. Defendants Sutters' motion [DE 116] is DENIED-IN-PART as it relates to Count 2 and 4 and GRANTED-IN-PART as it relates to Count 3.

SO ORDERED.

ENTERED: August 4, 2025

/s/ GRETCHEN S. LUND
Judge
United States District Court
